(43 Misc. Rep. 510.)

PEOPLE ex rel. POOLE et al. v. HESTERBERG, Sheriff.

(Supreme Court, Chambers, Kings County. May, 1904.)

1. CRIMINAL LAW—SUNDAY BALL PLAYING—WARRANT FOR ARREST—SUFFICIENCY OF INFORMATION.

     The playing of a game of baseball on Sunday, not being in and of itself a crime, but only such when it interrupts the repose and religious liberty of the community, a magistrate has no jurisdiction to issue a warrant for the arrest of one charged with such offense, unless the information charges and shows such an interruption.

Habeas corpus proceedings on the relation of Edward Poole and another against Henry Hesterberg, sheriff of Kings county. Relators discharged.

B. J. York, for relators.
John F. Clarke, Dist. Atty., for respondent.

GAYNOR, J. The question presented is whether the magistrate had jurisdiction to issue the warrant. That depends on whether the information or complaint stated facts sufficient to show that a crime had been committed. It is that the relators "did unlawfully engage in a game commonly called base ball on Sunday, April 24th, 1904," in the borough of Brooklyn. There is no allegation nor any statement of facts therein showing that "the repose and religious liberty of the community were interrupted" by them, to use the words of the Sunday statute.

The question therefore is whether playing a game of base ball on Sunday is in and of itself a crime, or whether it is a crime only when it interrupts the repose and religious liberty of the community. The latter was decided sixteen years ago here by our Supreme Court on appeal in the Case of Dennin, 35 Hun, 327. That decision is controlling. It was not overruled by the Moses Case in the Court of Appeals, 140 N. Y. 214, 35 N. E. 499. On the contrary, only three judges of the seven opposed it, three agreed with it, and the seventh refused to oppose it, putting his vote on another ground. It is binding on all of us and was followed by this court in the Bedell Case, 38 Misc. Rep. 171, 77 N. Y. Supp. 249, two years ago. The police, like every one else, must obey these decisions. It is necessary for the information to charge and show an interruption of the repose and religious liberty of the community. If that be done, a crime is charged, and a question of fact presented for trial; otherwise not.

No complaint was made in the present case by any citizen that the repose and religious liberty of the community or of himself were interrupted. The arrests were voluntarily made by the police, and the information is sworn to by a captain of police only. He does not allege that the repose and religious liberty of the community were interrupted. His action seems to be in defiance of the decisions of our courts. He sets himself above the law; a thing grown very common with the police in this city of late years, and of which there seems no sign of abatement by those who control the police. Men and women are being arrested daily on charges which the courts have decided over and over again do not constitute any criminal offense. It cannot be too often said to those who rule the police, that our government, like all free governments, is a government of laws and not of men. Those who turn it into one of men and not of laws are more dangerous to society than any other class of law breakers, or all other law breakers combined. They would destroy our system of government, and substitute one of arbitrary power and unlawful force.

Ten years ago the police of the city of Brooklyn took it upon themselves to chase, club and lock up all boys and men found playing ball on Sunday in the outskirts and remote places of the city, while many shows and places of evil resort were open, and train loads of people were being carried by to them; but on the protest of citizens they were stopped in their course by a police commissioner who came to understand the limitations of his powers and duty, and of those under him, under a free government such as ours. Since then ball playing and golf playing on Sunday have been unmolested here. It would seem that we are now on the eve of another similar movement by the police, for such movements come periodically, and for no reason whatever, other than mere officiousness.

This is one of a class of cases in which it is the duty of the judiciary to speak out plain, after the manner of judges in times past. I therefore deem it not at all outside of my judicial office to add to what I have already said, that it is practically the unanimous sentiment of the religious and God-fearing people of the community, that it is far better for our grown boys and young men who have to work indoors all the week for a living, to go into the fields on Sunday afternoon after attend-

ing church, and participate in or witness good, elevating, healthy. physical exercise, than to be driven instead to go to dance gardens,, drinking places, pool rooms and worse places; and there is no one trying to stir up any obscure or obsolete statute against that opinion except those who rule the police. Fathers and mothers would much rather know that their grown sons are at a ball or golf game on Sunday afternoon than not know where they are. Many of our boys and young men scarcely see the sun at all during the short days of the year except on Sundays, and have no other day for outdoor exercise from one end of the year to the other. This is something which our ministers of the gospel well know, and the significance of which they fully appreciate.

There are many minor offenses which should be left for redress to the coming forward of private accusers before the magistrates or other authorities, as our laws and the procedure of our courts contemplate. The accusatory method of enforcing the criminal laws is open to every citizen. The community can take care of itself in such matters without any police meddling. Base ball and golf, and other innocent and healthy games, are being played, everywhere outside of the city on Sunday without being meddled with by constables or policemen. Such meddling is practically unknown except in this city, where, of all places, we should have humane, sensible and intelligent government. The general sentiment of the community has to be consulted in respect of the enforcement of certain laws, and always has been in the Anglo-Saxon world as well as elsewhere, until recently in the city of New York. It is a maxim of the law that you cannot indict a whole community. The Anglo-Saxon sheds statutes which grow obsolete and obnoxious the same as a snake sheds his skin. He has seldom bothered to repeal them, as every one acquainted with the history of laws very well knows. No citizen any longer makes a complaint under them, and thus they become dead letter laws. It is not the business of the police to revive them. They are not employed and paid by the citizens for any such purpose.

The relators are discharged.